**The relief described hereinbelow is SO ORDERED.**

**Signed April 03, 2019.**



_____
**Ronald B. King**
**Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | |
| TRESHA-MOB, LLC, | § § | CASE NO. 18-52420-RBK |
| DEBTOR | § § | CHAPTER 11 |

**ORDER DENYING OBJECTION AND MOTION**

On this day came on to be considered *Voltaire Asset Managers II, LLC's Motion for Authority to Prosecute Limited Objection to Sale Hearing on Behalf of Debtor's Estate* (ECF No. 121) (the "*Limited Objection*") and *Joinder of Cherish Medical Office Building, LLC to the Motion for Authority to Prosecute Limited Objection to Sale Hearing on Behalf of Debtor's Estate* (ECF No. 122) (the "*Cherish Joinder*"), and the Court is of the opinion that the *Limited Objection* and *Cherish Joinder* should be denied for the following reasons.

First, while Voltaire changes the name and adds a theory to its "new" motion, the *Limited Objection* is merely a second motion to reconsider. In fact, since March 27, 2019, the Court twice ruled Cherish ineligible to bid, initially at the March 27, 2019 hearing (the "Sale Hearing") itself and

then when it denied Voltaire's first motion to reconsider in its March 29, 2019 *Order Denying Objection & Motion* (ECF No. 118). The first denied motion to reconsider was not an invitation to bring another. Voltaire seems to acknowledge that, in light of the opening sentence in the *Limited Objection* that its purpose "is not to beat a dead horse." ECF No. 121, p. 1, ¶ 1.

Nevertheless, the Court has again reviewed the transcript from the Sale Hearing, the first motion to reconsider, the *Limited Objection*, and the *Cherish Joinder* and struggles to find anything that ameliorates its concerns that Cherish is not a "good faith" bidder. In fact, as discussed further *infra*, if anything, the *Limited Objection* and *Cherish Joinder* lend additional support to the Court's findings as to Cherish's undisclosed ties to the Debtor.

Second, even if this Court were inclined to reconsider its initial ruling, this *Limited Objection* is not the proper procedural or substantive vehicle to so allow or compel. Voltaire cites **Louisiana World Exposition v. Fed. Ins. Co.**, 858 F.2d 233, 246 (5th Cir. 1988) as authority for it to assert an objection on behalf of the estate to the disqualification of Cherish. Under *Louisiana World Exposition*, a party-in-interest may derivatively pursue claims of the estate when the debtor-in-possession has a duty to do so but refuses. 858 F.2d at 246 ("Since [the] cause of action was property of the estate, the debtor-in-possession was duty bound to assert it if doing so would maximize the value of the estate."). Certainly, as Voltaire and Cherish have told this Court multiple times, the Debtor "has the duty to maximize the value of the estate." **Commodity Futures Trading Com'n v. Weintraub**, 471 U.S. 343, 352 (1985). Thus, Voltaire claims that this duty authorizes a court to grant "an equity interest holder," such as Voltaire, derivative "standing to pursue an objection belonging to the Debtor's estate" to the disqualification of a bidder at a § 363 sale. ECF No. 121, p. 2, n.4. That argument, however, misapplies the holding in *Louisiana World Exposition*.

Although Voltaire presents *Louisiana World Exposition* as a sort of talisman that mystically allows any party-in-interest to lodge any objection when it disagrees with a court's holding, the holding in that case is much more cabined. It merely allows a party-in-interest to pursue a "cause of action on behalf and in the name of the [debtor-in-possession]" when the "the debtor-in-possession is obligated to" pursue the cause of action but "is unable or unwilling to fulfill its obligation—due, for instance, to a conflict of interest." *Id.* at 252. Voltaire has not cited, and this Court has not been able to find, any case in which a court extended such derivative standing to an equity holder to bring an objection to the disqualification of a § 363-sale bidder. In fact, a review of the recent cases on derivative standing suggests the opposite trend, with courts narrowing the circumstances in which derivative standing may be appropriate. *See, e.g.*, **In re Smart World Techs., LLC**, 423 F.3d 166, 177, 180 (2d Cir. 2005) (denying derivative standing in Rule 9019 context).

In addition, even if Voltaire could achieve derivative standing under *Louisiana World Exposition* to bring this type of objection, Voltaire cannot satisfy the requirements outlined by the Fifth Circuit. For a party to attain derivative standing, *Louisiana World Exposition* requires that (1) the claim is colorable, (2) the debtor-in-possession has refused unjustifiably to pursue the claim, and (3) the moving party-in-interest receive leave to sue from the bankruptcy court. 858 F.2d at 247.

Here, the objection that Voltaire seeks to pursue is not "colorable." In its *Limited Objection*, Voltaire adopts a one-track value-maximization argument that ignores mountains of precedent in which trustees, debtors-in-possession, and courts have rejected the highest bid when it was not the "best bid." *See* **In re Family Christian, LLC**, 533 B.R. 600, 627 (Bankr. W.D. Mich. 2015) ("a debtor must demonstrate that the proposed purchase price is not only the highest offer, ***but the highest and best offer***") (emphasis added). While the bid that brings in the most cash often wins, it is "common knowledge" that the "highest bid is not always the best bid," especially if there are

3

"conditions sufficient to overbalance the difference between the two." *United States v. Chem. Found.*, 5 F.2d 191, 206 (3d Cir. 1925). The Bankruptcy Code thus affords courts "broad flexibility in determining which of several bidders should be deemed the successful bidder at a § 363(b) sale." *In re After Six, Inc.*, 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993). As such, courts routinely reject the proposition that reviewing courts or fiduciaries are "duty-bound to mechanically accept a bid with the highest dollar amount." *Lawsky v. Condor Capital Corp.*, 2015 WL 4470332, at *9 (S.D.N.Y. July 21, 2015) (internal quotation marks and citations omitted); *see also After Six*, 154 B.R. at 882 ("The Bankruptcy Code, like any law, must be read in its context as a tool of mankind, not a body of edicts to which mankind is a slave irrespective of its interests to the contrary.").

In determining whether the highest bid is the "best bid," the fiduciary and reviewing court must consider factors such as "the risks associated with each bid and the probabilities that the proposed terms will come to fruition" as well as "contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing." *Lawsky*, 2015 WL 4470332, at *9 (quoting and citing *Family Christian*, 533 B.R. at 622). Part and parcel with those considerations is the Court's ability to issue a "good faith" finding under § 363(m). Indeed, some courts have even adopted a per se approach that a court can never approve a § 363 sale without a good faith finding. *See, e.g.*, *In re Hereford Biofuels, L.P.*, 466 B.R. 841, 860 (Bankr. N.D. Tex. 2012) (Jernigan, J.) ("The court believes . . . that 'when a bankruptcy court authorizes a sale of assets pursuant to section 363(b)(1), it is required to make a finding with respect to the 'good faith' of the purchaser.'") (quoting *In re Abbotts Dairies of Pa.*, 788 F.2d 143, 150 (3d Cir. 1986)).

Although this Court stops short of adopting a per se "good faith" prerequisite, it reaffirms its finding that Cherish is not a good faith bidder here. Before the Sale Hearing, Cherish was the only bidder that never made a site visit to the property, never completed a nondisclosure agreement to

4

access the virtual data room, never actually accessed the virtual data room to conduct due diligence, and never even corresponded with the broker, CBRE. *See* Tr. at pp. 30–32. At the Sale Hearing, Cherish's representative would not and could not disclose Cherish's principals to the Court. In fact, the representative told the Court that, prior to the Sale Hearing "[t]he only conversations [he] had with [Cherish] [were about] the bidding process, the bidding price and the tenant estoppel certificates." Tr. at p. 29. Because of that, the Court exercised its discretion to disqualify Cherish.

None of the new facts disclosed by Voltaire or Cherish in the *Limited Objection* and *Cherish Joinder*, respectively, change that finding. In fact, the new evidence from the *Limited Objection* and *Cherish Joinder* reinforces the Court's finding that Cherish truly has failed to disclose to the Court its inextricable ties to the Debtor. Attached to the *Cherish Joinder* is the Affidavit of Randall E. Soulé, representative of Cherish Medical Office Building, LLC. *See* ECF No. 122, Ex. 1. In that Affidavit, while Mr. Soulé adamantly disclaims any interest "personally or through a company of TRESHA-MOB," he also includes a storied history with the Debtor and Michael Horrell, including a series of transactions involving the subject property of the Sale. *See id.* at pp. 2–3. These hide-the-ball tactics, in hopes that no one will connect the dots, gravely concerned the Court at the Sale Hearing. And the undisclosed entanglement between Mr. Soulé, Mr. Horrell, and the Debtor reinforces the Court's finding that Cherish should not be qualified to bid, much less as a "good faith" bidder. Instead, Cherish's bid feels a bit Potemkin—a carefully-crafted façade of independence hiding a different reality.

Third, even if this *Limited Objection* were proper and had merit, the Court still could not unwind the final sale. The Court has already signed and entered an order approving the sale (ECF No. 123), with a finding that the highest bidder at the Sale Hearing (Camco Land, Ltd.) "is entitled to all of the protections of Section 363(m) of the Bankruptcy Code afforded to a good faith

5

purchaser." ECF No. 123, p. 6, ¶ G. As such, principles of statutory mootness in § 363(m) hamstring the Court's ability to unwind (or even reconsider) the sale. *See* 11 U.S.C. § 363(m). The Fifth Circuit's recent case law on § 363(m) further supports such a strict application thereof. *See **In re Sneed Shipbuilding, Inc.***, 916 F.3d 405, 409–10 (5th Cir. 2019).

Accordingly, for the foregoing reasons, in conjunction with the reasons stated on the record at the Sale Hearing and in the Court's prior *Order Denying Objection & Motion*, the Court is of the opinion that the *Limited Objection* should be denied.

It is, therefore, **ORDERED, ADJUDGED, AND DECREED** that the above-referenced *Limited Objection* is hereby **DENIED**. A separate order denying the *Cherish Joinder* will be entered.

# # #